UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
_____

KATHLEEN LANGSTON,

        Plaintiff                                Dkt. no.

    v.

                                                     COMPLAINT

MILTON S. HERSHEY MEDICAL CENTER, EVANGELOS
MASSARIS, M.D., Ph. D.,. WALTER KOTHUL, CHIEF OF
COLORECTAL AND RECTAL SURGERY, MOUNT NITTANY
MEDICAL CENTER, and MADHAVI SINGH, M.D.

        Defendants

_____

Plaintiff, by her attorneys, Aaron David Frishberg, and Bonnie L. Kift, complaining of the acts of Defendants, states as follows;

## JURISDICTION

1. This Court has subject matter jurisdiction over the acts of Defendants MILTON S. HERSHEY MEDICAL CENTER ("HERSHEY'), EVANGELOS MASSARIS, M.D., Ph. D.,. WALTER KOTHUL,. and MT. NITTANY MEDICAL CENTER, ("MT. NITTANY") pursuant to 28 U.S.C. § 1343, to redress violations of Plaintiff's civil rights under color of law under 42 U.S.C. § 1983 and/or in violation of her right to reasonable modifications of programs under the Americans with Disabilities Act, and the Rehabilitation Act of 1973.

2. This Court has jurisdiction pursuant to 42 U.S.C. § 1395 (d) (2) (A) over Defendants HERSHEY and MT. NITTANY's violations of the Emergency Medical Treatment and Active Labor Act ("EMTALA") following Plaintiff's emergency admissions and inappropriate transfers or discharges.

3. This Court also has diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1331

over Plaintiff's common law and state law claims, which are greater than seventy-five thousand dollars against each party.

## VENUE

4. Venue is properly laid in the Middle District of Pennsylvania, where the events complained of occurred and where Defendants reside.

## PARTIES

5. At all times mentioned herein, Plaintiff, KATHLEEN LANGSTON, was a citizen of the United States residing in Pennsylvania. She is now a citizen and resident of Virginia. At all times mentioned herein she has been disabled within the meaning of the Americans with Disabilities Act and the Rehabilitation Act of 1973.

6. Defendant MILTON S. HERSHEY MEDICAL CENTER, ("HERSHEY") at all times mentioned herein, has been a hospital affiliated with the University of Pennsylvania. At all times mentioned herein it had contracted with the United States Department of Health and Human Services to provide medical services to Medicare patients in need of emergency medical treatment, and has been a recipient of federal funds.

7. Defendant EVANGELOS MASSARIS at all times mentioned herein was a surgeon employed by HERSHEY.

8. At all times mentioned herein, Defendant WALTER KOTHUL was the Chief of Colorectal Surgery at HERSHEY, and as such was directly responsible for supervising Defendant MASSARIS in the performance of the ileostomy on Plaintiff's person, including the choice of this surgery.

9. Defendant MT. NITTANY MEDICAL CENTER ("MT. NITTANY") at all times mentioned herein was a hospital organized under the laws of Pennsylvania located in State

College, PA, and all times mentioned herein had contracted with the United States Department of Health and Human Services to provide medical services to Medicare patients in need of emergency medical treatment, and has been a recipient of federal funds.

10. At all times mentioned herein, Defendant MADHAVI SINGH was a physician employed by MT. NITTANY.

## FACTS

## AS A FIRST CLAIM FOR RELIEF

11. Plaintiff suffers from chronic Krohn's Disease and diabetes.

12. Plaintiff had a perianal fistula which originated in 1997, and which had resulted in the loss of about two feet from the small intestine, and chronic diarrhea.

13. Defendant MASSARIS, under the supervision of Defendant KOTHUL, elected to perform and on March 14, 2013 did perform an ileostomy on Plaintiff.

14. Defendant MASSARIS misinformed Plaintiff that she might have a temporary ostomy rather than a health threatening high output ileostomy.

15. There is a fifty to eighty percent failure rate of perianal repairs in patients with Krohn's Disease.

16. Had Plaintiff been informed of the risks and alternatives that a reasonably prudent patient would require to make an informed decision as to that procedure, receiving such information would have been a substantial factor in the patient's decision whether to undergo the procedure.

17. Defendant MASSARIS held himself out as knowledgeable about the risks of the procedure and the proper method of performing surgery on a patient with Krohn's disease, and thus knowingly misrepresented hi professional experience.

18. The operation resulted in a very high output ileostomy.

19. While Plaintniff was at HERSHEY, Defendant MASSARIS failed to monitor her ostomy output.

20. On October 18, 2013, Defendant MASSARIS, under the supervision of Defendant KOTHUL, continued his reckless disregard for Plaintiff's well-being by prematurely discharging her from HERSHEY while she was still ill, requiring her to take a ninety-mile cab ride to an empty house.

21. About thirty hours after her premature discharge from HERSHEY, Plainitiff drove herself to the Emergency Department of MT. NITTANY

22. At MT. NITTANY, Defendant SINGH refused to give Plaintiff adequate hydration, or to consult with Plainitiff's family physician or gastroenterologist.

23. The staff of MT. NITTANY was attempting to discharge Plaintiff when Plaintiff went into renal failure.

24. On October 20, 2013, Plaintiff was transferred from MT. NITTANY to HERSHEY due to renal failure.

25. HERSHEY then attempted to discharge Plaintiff to her empty house, and Plaintiff had to call on her son to advocate for her, and arrange for her own admission to a nursing home for two weeks.

26. On March 27, 2013, Plaintiff began experiencing leg cramps. Residents consulted with Defendant MASSARI, and called back with the instruction that Plaintiff was to drink a quart of Gatorade. Plaintiff would later be told by Defendant SINGH that Gatorade was the worst possible choice for a patient with Krohn's Disease.

27. When the cramps continued for hours, Plaintiff was told by the resident to go to the local

hospital to be hydrated, which she did.

28.	Meanwhile, between October 21 and 23, 2013, Plaintiff was unable to have an ostomy bag attached and remain in place. Plaintiff was in excruciating pain when an ostomy bag was being attached.

29.	On October 21, 2013, Plaintiff was unable to apply a new appliance, and eventually arranged to be transported to MT. NITTANY

30.	Plaintiff was treated in the Emergency Department, while the nurses attempted to fit new appliances to her abdomen.

31.	Plaintiff was told by one doctor that she wasn't sick, and should go home, and she was sent to a room.

32.	On October 24, 2013, Plaintiff was told she had not been admitted to the hospital but was being kept for observation, and Defendant SINGH told her to go home and refused to give her IVs.

33.	As a result of Defendant SINGH's refusal to give her IVs, Plaintiff developed severe leg, arm, and back spasms, which intensified during the multiple ostomy appliance applications.

34.	Defendant SINGH refused to give Plaintiff electrolytes because, she said that Plaintiff's lab tests showed that Plaintiff's magnesium and potassium levels were "normal."

35.	Defendant SINGH refused to consult with Plaintiff's treating physician. who would have confirmed Plaintiff's contention that "normal" was not normal for her.

36.	Plaintiff continued to dehydrate on October 23, 2013, and passed out while walking to the bathroom, and was caught by a nurse.

37.	A nurse observed Plaintiff's arm in spasm, and spoke to Defendant SINGH, who ordered blood tests which showed that her renal functions were nine times as high as they should have

been.

38.    Plaintiff was sent out for CAT scans of her abdomen and kidneys, and Defendant SINGH acknowledged that Plaintiff might be in renal failure and ordered continuous IVs.

39.    On October 23, 2013, at about 3 p.m., Plaintiff developed severe acid vice-like rib pain, which continued and worsened through the day and evening, preventing Plaintiff from being able to sleep.

40.    On October 24, 2013, Defendant SINGH told Plaintiff that her creatinine level was 4, but that hopefully the damage was repairable.  Normal creatinine levels in women are 88 to 128.

41.    On October 26, 2013, Plaintiff's ostomy bag seals failed twice.  Plaintiff experienced terrible pain and asked to speak with Defendant SINGH about pain management.  But when Defendant SINGH did meet with with Plaintiff in the afternoon,  Defendant SINGH did not address the issue of pain management.

42.    Plaintiff continued to experience excruciating pain, and was not allowed out of bed without a staff member, because she had passed out.  Therefore when the ostomy bag seal failed at 1:00 p.m., she was left in a pool of bile until the staff could help her.

43.    At 3:00 p.m., Plaintiff developed vice-like rib pain in her ribs, which continued and increased as the day progressed.  Between 3:00 p.m. and 5:00 p.m. there were three appliance seal failures.  Plaintiff described the the experience of the bag changes as "pure torture."

44.    On March 27, 2013, the nurse implored Defendant SINGH to help Plainitiff, while Plaintiff's pain continued.

45.    When HERSHEY was informed of Plaintiff's condition, it immediately reserved a bed for her, and Plaintiff was transported to HERSHEY by ambulance.

46.    On October 27, 2013, Plaintiff was told by HERSHEY personnel that she was medically

ready for discharge and could be discharged to a non-skilled rehabilitation facility.

47. That morning, Plaintiff was experiencing severely painful leg cramps.

48. Because Plaintiff was unable to locate a rehabilitation facility near her home community with beds available, Plaintiff was sent home to an empty house by cab.

49. Plainttff was told by HERSHEY that she did not qualify for home care,.

50. At Plaintiff's request, HERSHEY found a rehabilitation facility for her, and she was transferred to Manor Care, in Carlisle, PA.

51. HERSHEY did not send prescriptions for Plaintiff's pain killer prescriptions or other medication presccriptions to Manor Care.

52. As a result, Plaintiff was not able to get her prescriptions until 5:30 a.m. the next morning.

53. Plaintiff left the Manor Home on November 15, 2013.

54. However, her health did not begin to improve until the ostomy was reversed in a surgery performed at Harrisburg Hospital in late July, 2014.

55. The acts and omissions of Defendant MASSARIS, and the failure to supervise MASSARIS by Defendants HERSHEY and KOTHO deprived Plaintiff of due process of law by subjecting her to medical care which recklessly disregarded her well-being and caused her injury.

## AS A SECOND CLAIM FOR RELIEF

56. Plaintiff repeats as if stated here in full ¶¶ 1-55 of this Complaint.

57. Defendants HERSHEY and MT. NITTANY deprived Plaintiff of reasonable modifications of their programs and services to provide her with equal treatment and ability to participate in the receipt of medical services which were adapted to her disabilities by providing services by physicians and surgeons qualified to treat Krohn's patients with diabetes, in violation of the Ameircians with Disabilities Act.

### AS A THIRD CLAIM FOR RELIEF

58. Plaintiff repeats as if stated here in full ¶¶ 1-57 of this Complaint.

59. Defendants HERSHEY and MT. NITTANY were at all times mentioned herein recipients of federal funds.

60. These Defendants violated the Rehabilitation Act of 1973, 29 U.S.C § 794.

### AS A FOURTH CLAIM FOR RELIEF

61. Plaintiff repeats as if stated here in full ¶¶ 1-60 of this Complaint.

62. Both Defendants HERSHEY and MT. NITTANY at all times mentioned herein had contracts with the United States Department of Health and Human Services fopr the provision of emergency medical services to Medicare patients.

63. Both Defendants HERSHEY and MT. NITTANY violated the Emergency Medical Treatment and Active Labor Act ("EMTALA") by discharging Plaintiff when she had been admitted for emergency treatment and/or by inappropriately transferring her to an inappropriate placement, when her condition was not stabilized.

### AS A FIFTH CLAIM FOR RELIEF

64. Plaintiff repeats as if stated here in full ¶¶ 1-63 of this Complaint.

65. Defendants MASSARIS, HERSHEY, SINGH, and MT. NITTANY departed from the standards of care of the medical and surgical professions.

66. Defendants MASSARIS and SINGH acted with wanton and reckless disregard for Plaintiff's well-being and health.

### AS A SIXTH CLAIM FOR RELIEF

67. Plaintiff repeats as if stated here in full ¶¶ 1-66 of this Complaint.

68. Defendant MASSARIS, under the supervision of Defendants KOTHUL and HERSHEY,

failed to inform Plaintiff of the risks, and alternatives to the ileostomy procedure, and knowingly misrepresented his professional experinece with performing surgery to correct conditions caused by Krohn's disease and thus denied Plaintiff the right to not be subject to a procedure without her informed consent.

Wherefore, Plaintiff respectfully requests that this Court enter judgment against Defendants for compensatory damages on her causes of action, for punitive damages against Defendants MASSARIS and SINGH, an injunction requiring Defendant NITTANY to modify its practices to accommodate patients with disabilities, and for reasonable attorneys' fees and the costs of this action, together with such further, other and different relief as this Court deems just in the premises.

JURY DEMAND

A jury trial is demanded of all issues triable by jury.

Yours, etc.

/s/

Aaron David Frishberg
pro hac vice admission pending
20 E. First Street, Suite 204
Mt. Vernon, NY 10550
212 740 4544
lawyerADF@aol.com

Bonnie L. Kift
121 Saint Clair Circle
Ligonier, PA 15658
724 238-2410
attyblkift@gmail.com

Mt. Vernon, NY
October 12, 2015